UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LISA POSTHUMUS LYONS,
Kent County Clerk,

      Petitioner,

v.

MY PILLOW, INC., and
MICHAEL J. LINDELL,

      Respondents.
_____/

Case No. 1:22-cv-1191

Hon. Hala Y. Jarbou
Hon. Phillip J. Green

## ORDER

      This matter is before the Court on Petitioner's Bill of Costs and Statement of Attorneys' Fees. (ECF No. 18). Having granted Petitioner's Motion to Quash Subpoena and for Sanctions (Order, ECF No. 16), the Court ordered Petitioner to file a petition for attorneys' fees and costs associated with the motion to quash (*id.* at PageID.546). Petitioner is seeking a total of $23,997.00 in fees incurred as the result of the work of three attorneys, as well as $49.00 in costs (the filing fee). For the reasons stated herein, the Court will award fees in the amount of $21,161.50 and costs in the amount of $49.00.

### Procedural History

      On October 4, 2022, the Kent County Clerk filed a petition, pursuant to Federal Rule of Civil Procedure 45(d)(3), seeking to quash a third-party subpoena served by Michael Lindell and My Pillow, Inc. (ECF No. 1). The subpoena was issued in *US*

*Dominion, Inc. v. My Pillow, Inc.*, Case No. 1:21-cv-445 (D.D.C.), in which Dominion is suing Mr. Lindell and his company for defamation and deceptive trade practices. (Case No. 1:21-cv-445 (D.D.C.), ECF No. 1). The allegedly defamatory statements related to Mr. Lindell's claims regarding the 2020 presidential election to the effect that Dominion had "rigged the election" and had "used algorithms to manipulate vote counts." (*Id.*). On October 31, 2022, Respondent filed a response to the petition to quash. (ECF No. 8). Petitioner replied on November 15, 2022. (ECF No. 14).

The subpoena issued to the Kent County Clerk sought myriad information, documents, and electronic data relating to the November 2020 election. (*See* ECF No. 1-7). This included forensic images of many of the county's computer drives, forensic copies of certain electronic files, information related to the electronic election system architecture, information related to the results of the November 2020 election, all documents related to any indication of an intrusion into the county's electronic election system, as well as contracts and bills relating to election services provided by other entities. (*Id.* at PageID.6-8).

The Court held a hearing on November 29, 2022. (Minutes, ECF No. 15). During the hearing, the Court noted that Rule 45(d)(1) requires that a party serving a subpoena " 'must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.' " (Hrg. Tr. at 39, ECF No. 25, PageID.660 (quoting Rule 45(d)(1))). Having considered the parties' oral and written submissions, the Court concluded:

> I am granting the motion to quash. It is eminently demonstrated that the breadth of the subpoena could not

2

>be greater.  The burden that this imposes on any county would be unduly burdensome.  No effort was made that I can discern to narrow the scope of the subpoena to obtain that which may be, and I emphasize may be, relevant to the pending litigation between Mr. Lindell and My Pillow and the Dominion Company.

(*Id.* at PageID.661).  The Court noted that the breadth of the scope of the subpoena, coupled with Respondent's utter failure to meet its responsibilities under Rule 45(d)(1), required the imposition of sanctions in the form of attorneys' fees and costs.  (*Id.* at PageID.662-63).

The Court incorporated its rulings from the bench in a written order quashing the subpoena.  (ECF No. 16).  The Court ordered Petitioner to file her petition for fees and costs no later than fourteen days thereafter, and allowed Respondent fourteen days from service of the petition to respond.  (*Id.* at PageID.546).  Petitioner timely complied (ECF No. 18), as did Respondent (ECF No. 26).  The Court thereafter ordered Petitioner to supplement her bill of costs with counsel's billing records.  (ECF No. 27).  Petitioner has complied (ECF No. 28) and Respondent has filed a response to the supplement (ECF No. 31).

## ANALYSIS

Rule 45 includes mechanisms for enforcing the serving party's duty to take reasonable steps to avoid imposing undue burden or expense on the subpoenaed party.  That rule requires that the Court enforce this duty and sanction violators with, among other things, the payment of "reasonable attorney's fees."  FED. R. CIV. P. 45(d)(1).  Having found that the award of fees and costs is warranted, the Court must now determine the reasonableness of the fees and costs sought here.

The Supreme Court has explained that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This is the "lodestar method" of calculation. *See Perdue v. Kenny A.*, 559 U.S. 542, 546 (2010); *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005); *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000).[1]

### The Reasonable Hourly Rate

The Court begins this analysis by determining a reasonable hourly rate. "Ordinarily, courts look to '[rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.' " *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). There is a presumption in favor of the community market rates. *See, e.g., Blum*, 465 U.S. at 895 ("'[R]easonable fees' . . . are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."); *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) ("A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the '*prevailing market rate in the relevant community*.'" (quoting *Blum*, 465

---

[1] The Sixth Circuit "rel[ies] on precedents involving attorney fees without regard to whether they involved Title VII or some other federal statute." *Isabel*, 404 F.3d at 415.

4

U.S. at 895)) (emphasis in *Adcock-Ladd*); *Coulter v. Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986) ("We . . . apply the principle that hourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question."). The so-called "community market rule" has the "principle virtue of being the easiest way to cope with the 'inherently problematic' task of ascertaining a reasonable fee in a situation where 'wide variations in skill and reputation render the usual laws of supply and demand inapplicable[.]' " *Hadix*, 65 F.3d at 536 (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)).

Having determined that the community market rule applies here, the next step is determining the prevailing market rate in West Michigan. In order to determine the local market rate, a court should rely on a combination of its own expertise and judgment. *Garber v. Shiner Enterprises, Inc.*, No. 1:06-cv-646, 2007 WL 4557857, *1 (W.D. Mich. Dec. 21, 2007) (citing *United States ex rel. Educ. Career Dev., Inc. v. Cent. Fla. Reg'l Workforce Dev. Bd., Inc.*, No. 6:04-cv-93, 2007 WL 1601747, *6 (M.D. Fla. June 1, 2007)). The Court may consider proof of rates charged in the community under similar circumstances, as well as opinion evidence of reasonable rates. *See Garber*, 2007 WL 4557857 at *1 (citing *Educ. Career Dev., Inc.*, 2007 WL 1601747 at *3). Other relevant sources include the attorney's actual billing rate and fee awards from prior cases. *See Payton v. New Century Mortgage Corp.*, Nos. 03 c 333, 03 c 703, 2004 WL 524693, at *2 (N.D. Ill. Mar.11, 2004).

Petitioner asks the Court to calculate her award using the following hourly rates for her attorneys: Madelaine Laine $500.00, Matthew Nelson $575.00, and Tessa Mallett $275.00. (ECF No. 18, PageID.553). Ms. Laine was lead counsel in this matter, and she has been in practice since 2007, becoming a partner in her firm in 2016. (*Id.* at PageID.552). She has received a number of awards and recognitions for her professional accomplishments. (*Id.*). Mr. Nelson has been in practice more than twenty years, and he has received national and regional awards for his work as a litigator. (ECF No. 18-2). Ms. Mallett has been in practice since her admission to the Michigan Bar in 2021. (ECF No. 18-3).

The Court has reviewed the 2020 edition of the State Bar of Michigan's Economics of Law Practice in Michigan, which was submitted by Respondents; this includes reported billing rates throughout Michigan. (*See* ECF No. 26-2). This is an acceptable source. *See Wells v. Corporate Accounts Receivable*, 683 F. Supp.2d 600, 603 (W.D. Mich. 2010) (citing *O'Connor v. Trans Union, LLC*, No. 05-cv-74498, 2008 WL 4910670, *6 (E.D. Mich. Nov. 13, 2008)). "District courts have relied on the State Bar of Michigan . . . Economics of Law Practice Survey to determine average billing rates in Michigan, and the Sixth Circuit has approved this practice." *Wells*, 683 F. Supp.2d at 603 (citing *O'Connor*, 2008 WL 4910670, at *5 and *Lamar Advertising Co. v. Charter Twp. of Van Buren*, 178 F. App'x. 498, 501-02 (6th Cir. 2006)).

According to that survey, the "mean" hourly rate for attorneys in Grand Rapids is $312.00; the hourly rate rises to $375.00 for attorneys in the 75th percentile; and the rate rises to $545.00 for attorneys in the 95th percentile. (ECF No. 26-2,

6

PageID.680). The Court finds that, based on their years of experience and the level of their litigation practice, Ms. Lane and Mr. Nelson's hourly rates should be calculated at the midpoint between the 75th and the 95th percentiles. That would result in an hourly rate for both attorneys of $460.00. Ms. Mallett's requested hourly rate of $275.00 is below the mean and is only slightly greater than the 25th percentile. (*See id.*). That rate is eminently reasonable.

## Hours Reasonably Expended

The next inquiry addresses the number of hours claimed. In order to accept the claimed time expenditure, "the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *United Slate, Tile & Composition Roofers Ass'n, Local 307 v. G. & M. Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984). The party seeking an award of attorneys' fees has the burden of proving the number of hours reasonably expended on the litigation. *Hensley*, 461 U.S. at 433; *see Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999).

The Court has carefully reviewed Petitioner counsels' billing records relating to the motion to quash.[2] With one exception, the Court finds the work performed and the time claimed for reimbursement to be reasonable.[3] The following work and time is deemed reasonable by category:

1. Reviewing the subpoena, discussions regarding strategy, and negotiations with Respondent.

    Mr. Nelson – 5.7 hours

    Ms. Lane – 0.4 hours

2. Research and drafting motion to quash, and conferences regarding the same.

    Mr. Nelson – 8.8 hours

    Ms. Lane – 2.4 hours

    Ms. Mallett – 16.9 hours

3. Review response to motion to quash and draft reply.

    Mr. Nelson – 0.9 hours

    Ms. Lane – 10.8 hours

4. Prepare for and attend hearing on motion to quash.

    Mr. Nelson – 0.2 hours

    Ms. Lane – 6.7 hours

---

[2] For some reason unknown to the Court, Petitioner is not seeking reimbursement for 23.7 of the hours her attorneys expended in this matter.  (*See* ECF No. 28, PageID.691, 694-97, 700, 704 (designated by red text)).

[3] Petitioner seeks reimbursement for 0.9 hours of time an associate spent researching news articles concerning Mr. Lindell's statements on public records requests. (ECF No. 28, PageID.695-96).  The Court is unable to discern how this research is relevant to the issues in the motion to quash.  Accordingly, this time will not be reimbursed.

This results in a total number of hours for Mr. Nelson of 15.6; a total number of hours for Ms. Lane of 20.3; and a total number of hours for Ms. Mallett of 16.9. Multiplying these hours by the rate indicated above results in a fee award as follows: Mr. Nelson – $7,176.00; Ms. Lane – $9,338.00; and Ms. Mallett – $4,647.50. The total fee award is $21,161.50.

Petitioner seeks reimbursement of $49.00 for the filing fee. (ECF No. 18, PageID.551). As the filing fee is a requirement to filing the motion to quash, the reasonableness of that request is beyond debate. The Court will award that cost.

The Court has also considered both of Respondent's responses in opposition to the bill of costs. (ECF No. 26, 31). Respondents generally complain about the hourly rates sought and the time expended. Their objections lack the specificity necessary for meaningful review. Moreover, the Court has determined the appropriate rate of reimbursement, as well as the time reasonably necessary to the successful litigation of this matter. Accordingly,

**IT IS ORDERED** that Respondents shall, within thirty days of the date of this Order, pay Petitioner $21,161.50 for attorneys' fees and $49.00 in reimbursement for the filing fee, totalling $21,210.50.

**IT IS SO ORDERED.**

Date: January 26, 2023              /s/ Phillip J. Green
                                    PHILLIP J. GREEN
                                    United States Magistrate Judge