UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA POSTHUMUS LYONS,

    Petitioner,

v.

                      Case No. 1:22-cv-1191

MY PILLOW, INC., and MICHAEL
LINDELL,
                      Hon. Hala Y. Jarbou

    Respondents.
_____/

## **OPINION**

This matter arises out of pending litigation in the United States District Court for the District of Columbia. (*See Dominion, Inc. v. My Pillow, Inc.*, Case No. 1:21-cv-445.) Respondents subpoenaed Petitioner to produce information from Kent County related to the 2020 presidential election. The magistrate judge granted Petitioner's motion to quash the subpoena and sanctioned Respondents (ECF No. 16). The magistrate judge subsequently awarded Petitioner $21,210.50 in attorney's fees and costs (ECF No. 35). Before the Court are Respondents' appeals of the aforementioned orders, ECF Nos. 19 and 36, respectively.

### I. FACTUAL BACKGROUND

On February 22, 2021, U.S. Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation brought claims of defamation and deceptive trade practices against Respondents in the United States District Court for the District of Columbia. (Dominion Compl., ECF No. 8-2.) Dominion is seeking approximately $1.3 billion dollars in damages on both counts. (*See id.*) With respect to the defamation claim, Dominion alleges that Respondents

made false statements that Dominion used its algorithms to manipulate the outcome of the 2020 presidential election.  (*Id.* ¶¶ 163-72.)

Kent County uses Dominion voting machines and software to conduct elections.  (Uzarski Decl. ¶ 6, ECF No. 1-2.)  Petitioner Lyons is the Kent County Clerk.  On September 6, 2022, Respondents subpoenaed Petitioner to produce information relating to Kent County's voting machines and the 2020 election, including but not limited to: "[c]opies of any document, report, or spreadsheet that was produced in relation to the November 2020 Election," "[c]opies of all contracts and agreements with the suppliers of any of Your electronic election system equipment, devices, software, or support services," "[c]opies of all contracts and agreements related to network security, network monitoring, or cybersecurity concerning all or any part of Your electronic election system," and "[a] list of all personnel who had access to the EMS Server or any EMS server-connected computing device for the period January 1, 2019 through November 30, 2020."  (Subpoena, ECF No. 1-7.)  The subpoena had a return date of September 30, 2022.  (*Id.*)  Respondents argue that they "have reason to infer that information from Dominion equipment used in the 2020 election will provide evidence concerning the truth or inherent probability of the statements placed at issue by Dominion's complaint" to defeat the defamation claim. (Respondents' Appeal of Order Quashing Subpoena, ECF No. 19, PageID.577.)

On September 9, 2022, Petitioner informed Respondents that the subpoena as written "would impose a considerable burden on the elections staff and expense to the County."  (9/9/2022 Letter from Petitioner, ECF No. 1-9.)  Petitioner wrote to Respondents again on September 16, 2022, noted their failure to respond, and requested that they withdraw their subpoena.  (9/16/2022 Letter from Petitioner, ECF No. 1-10.)  Respondents replied on September 21, 2022, and indicated that because similar subpoenas were served on several other counties with identical return dates,

they intended to review the responses to the other subpoenas before determining how to proceed with respect to the Kent County subpoena. (9/21/2022 Letter from Respondents, ECF No. 1-11.)

Petitioner notified Respondents of her motion to quash the subpoena and requested a waiver of service on October 6, 2022. (Petitioner's Notice of Motion to Quash, ECF No. 8-12.) Respondents waived service on October 17, 2022. (Respondents' Waiver of Service, ECF No. 8-13.) The magistrate judge heard oral arguments on the motion on November 29, 2022. (11/29/2022 Hr'g Minutes, ECF No. 15.) The same day, the magistrate judge entered an order quashing the subpoena, sanctioning Respondents, and ordering Petitioner to file documentation of attorney's fees and costs associated with the motion to quash within fourteen days. (11/29/2022 Order, ECF No. 16.) Petitioner timely complied (ECF No. 18), and Respondents timely filed their response (ECF No. 26). The magistrate judge then ordered Petitioner to supplement the bill of costs with counsel's billing records (ECF No. 27). Petitioner again complied (ECF No. 28) and Respondents timely filed another response to the supplement (ECF No. 31). After considering Petitioner's bill of costs as well as Respondents' arguments in opposition, the magistrate judge awarded Petitioner $21,210.50 in attorney's fees and costs. (1/26/2023 Order, ECF No. 35.)

## II. STANDARD

When a party objects to a magistrate judge's resolution of a nondispositive matter, the district judge must consider those objections and then modify any part of the order that is "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). "'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Adams Cnty. Reg'l Water Dis. v. Vill. of Manchester*, 226 F.3d 513, 517 (6th Cir. 2020) (quoting *United States v. U.S. Gypsum Co.*, 333, U.S. 364, 395 (1948)).

### III. ANALYSIS

#### A. Order Quashing Subpoena

Under Federal Rule of Civil Procedure 45, a party may subpoena a non-party to produce discovery related to pending litigation. *See* Fed. R. Civ. P. 45(a)(1)(D). Upon the filing of a timely motion, "the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden." *Id.* at 45(d)(3)(iv).

Respondents argue that the magistrate judge erred by "[s]tripping any consideration of Rule 26 principles from the analysis" under Rule 45(d)(3)(iv). (Respondents' Reply Br. in Supp. of Appeal of Order Quashing Subpoena, ECF No. 34, PageID.746.)[1] To the contrary, the magistrate judge correctly applied Sixth Circuit precedent which combines the principles of Rule 45 and Rule 26. (*See* 11/29/2022 Hr'g Tr. 14-15, ECF No. 25.) According to the Sixth Circuit, "[u]ndue burden is to be assessed in a case-specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *In re Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). "Courts must 'balance the need for discovery against the burden imposed on the person ordered to produce documents,' and the status of that person as a non-party is a factor." *Id.* (quoting *Am. Elec. Power. Co., Inc.*, 191 F.R.D. at 136).

The subpoena here imposed a heavy burden on Petitioner. The subpoena could not be written more broadly and is entirely devoid of specificity. It requests that Petitioner produce "any document, report, or spreadsheet that was produced in relation to the November 2020 election."

---

[1] Respondents incorrectly assert that the magistrate judge relied on Rule 45(d)(2) to quash the subpoena. (*See* Respondents' Reply Br. in Supp. of Appeal of Order Quashing Subpoena, PageID.746.) As the transcript of the hearing on Petitioner's motion to quash demonstrates, the magistrate judge relied on Rule 45(d)(3) to quash the subpoena and Rule 45(d)(1) to impose sanctions. (*See* 11/29/2022 Hr'g Tr. 39-40, ECF No. 25.)

(Subpoena, PageID.141.)  Indeed, the only limiting term appears to be anything related to the 2020 election.  The magistrate judge correctly labeled this as "the type of subpoena somebody issues when they have no idea what they're really looking for, but they want to make sure they capture everything possible."  (11/29/2022 Hr'g Tr. 35.)  Compliance with the subpoena would also require Kent County to expend a substantial amount of taxpayer money.  The Elections Director for Kent County estimated that gathering the documents would require approximately 80 hours of employee time; copying the documents would require review of 2.5 gigabytes of data, which is equivalent to 250,000 emails and would cost approximately $625,000 to review; replacing or re-certifying the electronic management system after turning over all drives attached to it could cost up to $295,000; and replacing the election equipment due to the security concerns associated with providing Respondents with proprietary information could cost an estimated $4.2 million.  (*See* Uzarski Decl. ¶¶ 4, 5, 7.)

The considerations on the other side of the scale—the need for this information and its relevance—do not tip the balance in favor of Respondents.  Some of the defamatory statements made by Lindell relate to Antrim County, Michigan.[2]  According to Respondents, "[a]n IT professional reviewed a Dominion system from [Antrim County] after the 2020 election and found data indicating internet communications between that system and IP addresses in Taiwan and Germany."  (Respondents' Br. in Opp'n to Motion to Quash, ECF No. 8, PageID.189.)  Yet as counsel for Respondents represented to the magistrate judge at the hearing, Respondents have subpoenaed Kent, Berrien, Wayne, Saginaw, and Calhoun County but not Antrim County.

---

[2] For example, during Lindell's self-produced "docu-movie" titled "ABSOLUTE PROOF: Exposing Election Fraud and the Theft of America by Enemies Foreign and Domestic," Lindell referenced Antrim County and townships within it stating that "this massive machine election fraud that went on, were countries hacked into our election, a nationwide—this is one little county in Northern Michigan, and these machines would do it right down to the precinct." (Dominion Compl., PageID 315, 318.)

5

(11/29/2022 Hr'g Tr. 37.)  Respondents have provided the Court with no specifics as to what, if anything, they expect to find in Kent County.  Respondents argue that any information pertaining to "the truth and the plausibility of statements that the reported results of the 2020 election were manipulated on Dominion election equipment" is relevant to the pending litigation in the District of Columbia.  (Respondents' Appeal of Order Quashing Subpoena, PageID.580.)  Under Respondents' definition of relevance, any 2020 election information from any county in the United States could be relevant.  The Court recognizes Respondents' need for information to defend against potential liability, but Respondents have provided no explanation as to why they believe Kent County in particular holds this information.[3]  In sum, Respondents' need for discovery does not outweigh the burden this subpoena imposes on Petitioner.

Finally, the protective order issued by the Honorable Carl J. Nichols in the pending litigation in the District of Columbia does not change this outcome.  (*See* Protective Order, ECF No. 19-1.)  Respondents correctly note that a protective order could alleviate some of Petitioner's privacy and security concerns.  However, a protective order does not eliminate the burden imposed on Petitioner to produce such expansive discovery that, again, may not yield any relevant information.  The magistrate judge's order quashing the subpoena was neither clearly erroneous nor contrary to law.

---

[3] Indeed, the Michigan Senate Oversight Committee's Report on the November 2020 Election in Michigan "confidently assert[ed] that it has been thorough in examination of numerous allegations of unlawful actions, improper procedures, fraud, vote theft, or any other description which would cause citizens to doubt the integrity of Michigan's 2020 election results.  Our clear finding is that citizens should be confident the results represent the true results of the ballots cast by the people of Michigan." (Mich. Rep. on Nov. 2020 Election, ECF No. 1-4, PageID.109.)  And the results in Kent County, in particular, went through a routine audit process.  (12/9/2020 WZZM News Article: "Kent County Clerk begins post-election audit," ECF No. 1-13; results available at https://www.accesskent.com/Departments/Elections/Results/.)

**B. Order Awarding Attorney's Fees and Costs**

Rule 45 requires "[a] party or attorney responsible for issuing and serving a subpoena [to] take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1).

"An award of sanctions under Rule 45(d)(1) is left to the Court's discretion." *In re Risner*, 338 F.R.D. 380, 384 (S.D. Ohio 2021) (internal citations omitted). Courts have awarded attorney's fees when "(1) the subpoena imposed an undue burden on a non-party, and (2) the party requesting the subpoena failed . . . to carry out [its] Rule 45-mandated duty to take reasonable steps to avoid imposing an undue burden on the non-party." *Fusion Elite All Stars v. Nfinity Athletic, LLC*, No. 20-cv-2226-SHL-TMP, 2022 WL 18283187, at *4 (W.D. Tenn. Dec. 12, 2022), *report and recommendation adopted*, No. 2:22-cv-2226-SHL-TMP, 2023 WL 184257 (W.D. Tenn. Jan. 13, 2023); *see also Silberman v. Lowe's Home Ctrs., LLC*, No. 1:18-cv-00792, 2020 WL 1904618, at *3 (W.D. Mich. Apr. 17, 2020) (awarding attorney's fees when the issuing-party did not take reasonable steps to avoid imposing an undue burden on the non-party).

Here, the magistrate judge found that the breadth of the subpoena coupled with Respondents' failure to meet their obligations under Rule 45(d)(1) to avoid imposing an undue burden on Petitioner warranted imposing sanctions in the form of reasonable attorney's fees and costs. (*See* 11/29/2022 Hr'g Tr. 39-40; 1/26/2023 Order, PageID.756.) As previously explained, the subpoena imposed an undue burden on Petitioner. The Court, therefore, turns its attention to the steps taken by Respondents to avoid imposing this undue burden on Petitioner.

Respondents argue that the magistrate judge erred in finding that they "acted improperly by failing to make efforts to narrow the Subpoena before serving it" because "[n]o applicable law

7

requires counsel to negotiate the scope of a Subpoena prior to serving it." (Respondents' Appeal of Order Quashing Subpoena, PageID.587.)  In *Modern Plastics*, the issuing-party's attorney, "as an experienced commercial litigator, would have known that complying with such subpoenas would involve considerable time and resources [and] implicate significant concerns about customer privacy . . . ." *In re Modern Plastics Corp.*, 890 F.3d at 251.  The Sixth Circuit found that the bankruptcy court did not abuse its discretion in ordering sanctions when much of the undue burden "could have been avoided either initially, or by engaging with Respondents' counsel to address the concerns, tailor the document requests, or comment on the proposed protective order." *Id.*  Accordingly, Respondents' actions prior to serving the subpoena are relevant to the question of whether sanctions are warranted.  The Court agrees with the magistrate judge's conclusion that, "[a]ny reasonable person looking at [this] subpoena had to know it was going to be unduly burdensome." (11/29/2022 Hr'g Tr. 40.)  Respondents made no effort prior to issuing the subpoena to narrow its scope or tailor the extraordinarily broad requests.

The parties' communications after the subpoena was issued further show that Respondents failed to take reasonable steps to reduce the burden on Petitioner.  On September 9, 2022, Petitioner wrote Respondents, noting that the subpoena, as written, imposed a "considerable burden." (9/9/2022 Letter from Petitioner.)   After receiving no response, Petitioner again wrote to Respondents on September 16, 2022, notifying them that if the subpoena is not withdrawn, then Petitioner will move to quash.  (9/16/2022 Letter from Petitioner.)  Respondents replied on September 21, 2022—9 days before the return date—informing Petitioner that because similar subpoenas were served on other counties, Respondents "will be in further contact in the future regarding Kent County's objections." (9/21/2022 Letter from Respondents.)  Respondents further indicated that they would not bring a motion to compel prior to discussing the subpoena with

8

Petitioner. (*Id.*) However, during the hearing, counsel for Respondents indicated that she couldn't "say if there was never a motion to quash that [her] client would not have filed a motion to compel." (11/29/2022 Hr'g Tr. 28.) Respondents claim to recognize the burden the subpoena placed on Petitioner yet ultimately took no meaningful steps to alleviate it. The magistrate judge did not err in imposing sanctions.[4]

## IV. CONCLUSION

For the reasons stated above, the Court will deny Respondents' appeals of the magistrate judge's orders quashing their subpoena (ECF No. 19) and awarding Petitioner attorney's fees and costs (ECF No. 36). An order will enter consistent with this opinion.

Dated: March 3, 2023        /s/ Hala Y. Jarbou
                            HALA Y. JARBOU
                            CHIEF UNITED STATES DISTRICT JUDGE

---

[4] Respondents only object to the imposition of sanctions, rather than the amount ultimately awarded by the magistrate judge.